On Arpihoation for Rehearing.
The opinion of the Court was delivered hy
Fenner, ■ J.
We have given much reflection and earnest consideration to the learned brief for rehearing filed herein by counsel for defendants, and especially to their views touching the law applicable to insanity as a defense in criminal prosecutions.
Tlie presumption of innocence and the presumption of sanity are both embraced within the class of disputable presumptions of law corresponding to the prcesumptiones juris of the Roman law, which may always be overcome by opposing proof. 1 Greenl. Ev. § 33; 1 Wharton Cr. L. § 707.
It cannot be sensibly urged that tlie presumption of sanity is the less powerful of the two, since it is the basis of all human responsibility, the foundation of all law, and the accepted guide of conduct in all tlie transactions and relations of mankind. Experience certainly demonstrates that, in prosecutions for crime, the presumption of innocence is rebutted a thousand fold more frequently than ■ the presumption of sanity, and the application of any other test would, not exhibit a different result. Inasmuch as human experience is the' foundation of presumptions, this would seem to indicate that the presumption of sanity is the better founded and more powerful of the two.
The doctrine that, in criminal cases, the guilt of the accused must be established beyond a reasonable doubt, rests on no other reason or principle than that such proof is necessary to overcome the presumption of innocence. Now, if, as we have shqwn, the presumption of sanity is of like character, and of equal, if not superior strength, why should it be overcome by a less degree of proof?
It cannot be successfully maintained, that in criminal cases, the presumption of sanity is neutralized or overcome, or .nullified hy the presumption of innocence. Tlie weight of authority is overwhelming in favor of tlie doctrine, that, when the State has established the corpus delicti in such manner that the accused, if sane, would he held guilty, *194 the presumption of innocence is rebutted, and the presumption of sanity comes into full operation to complete, by its own force, the case of the State; and that, if the accused relies upon the defense of insanity, the burden of proof is thrown upon him and he- must establish it by such proof as will rebut the presumption of sanity.
Ths question upon which English and American courts are mainly divided is as to the kind and degree of evidence required to effect such rebuttal.
This question is not concluded by authority. Courts have propounded three theories, viz.:
1. That insanity, as a defense, must be proved beyond a reasonable doubt. 2. That the jury are to be governed by the preponderance of evidence. 3. That the prosecution must prove sanity beyond a reasonable doubt. Whart. Cr. L. § 55.
The last theory does not commend itself to our judgment, is supported, in its full extent, by few authorities, and is directly contrary to the jurisprudence of this Court, as established in the only casein which the subject was directly considered, and where it was held, that, “ when insanity is pleaded in defense of a criminal act, it must be clearly shown that it existed at the time of the act,” and that “ every person is presumed to be sane until the contrary is proved, and it is for him who sets lip this defense, to prove it by evidence which will satisfy the minds of the jury that the party was insane at the time of the commission of the offense.” State vs. Coleman, 27 A. 691.
The joint opinion of the Judges of England, delivered to the House of Lords, through Lord Chief Justice Tindal, declared that “ the jury ought to be told, in all cases, that every man is presumed to be sane and to possess a sufficient degree of reason to be responsible for his crimes, until the contrary be proved to their satisfaction; and that to establish a defense on the ground of insanity, it must be clearly proved, etc.” McNaghten’s case, 10 Clark and Pin. 210.
The doctrine, in nearly the same words, is announced by Mr. Green-leaf. 2 Greenl. Ev. § 373.
In Bellingham’s case it is said that Lord Mansfield instructed the jury that insanity “ ought to be proved by the most distinct and unquestionable evidence, * * * that, in fact, it must be proved beyond all doubt, * * * and that there was no other proof of insanity that would excuse murder or any other crime.”
In Oxford’s case, Lord Lyndliurst told the jury, that “ they must be satisfied, before acquitting the prisoner, that he did not know, etc.,” and then expressed his entire concurrence in the observations of Lord Mansfield, just quoted. 1 Russell on Cr. p. 9.
The'English authorities are uniform to the effect, that, in order to *195 sustain the defense of insanity, the jury must be satisfied that it exists, and that the proof must be clear and convincing, and we do not understand even the decisions of Lords Mansfield and Lyndhurst to go further than this, being satisfied that they only meant that the proof must be such as to exclude all reasonable doubt.
The Supreme Courts of Virginia, of Alabama, of Missouri, of Massachusetts, of Pennsylvania, of California, of New Jersey, and perhaps other States, have all held in accordance with the doctrine of this Court in Coleman’s case, that the burden of proof to rebut the presumption of sanity, is on the defendant, and that insanity must be proved affirmatively, fully and clearly, and in such manner as to satisfy the jury. It is true that several of the courts referred to, qualify their expressions by saying, in effect, that though it must be proved clearly and to the satisfaction of the jury, yet it need not be proved beyond a reasonable doubt. The limitation is entirely inconsistent with the original proposition. That which leaves reasonable doubt in the mind, cannot be said to be clearly proved. A mind vexed with reasonable doubts about a fact cannot be satisfied as to the existence of such fact.
Proof beyond reasonable doubt means nothing more, in the oft-quoted language of Chief Justice Shaw, than “ that the evidence must establish the truth of the fact to a reasonable and moral certainty ■; a certainty that convinces and directs the understanding and satisfies the reason and judgment of those who are bound to act conscientiously upon it.” Webster case, 5 Cush. 320.
As said by another learned Court, “ all that the law requires is moral certainty, which is that the jury, whether the evidence be positive or presumptive, should be satisfied.” Giles vs. State, 6 Geo. 276.
Hair-splitting distinctions, under which some courts hold, that if the jury entertain only a reasonable doubt of the insanity, they must convict, but if they entertain reasonable doubt of the sanity of the prisoner, they must acquit, do not commend themselves to our judgment. Sanity and insanity are opposite conditions, exclusive of each other. A reasonable doubt as to insanity is a reasonable doubt as to sanity, and vice versa.
We can understand, that as to indifferent questions, not primarily solved by any presumption of law, and which the jury must solve, one way or the other, there may arise a state of mind, in which, though not clearly convinced either way, the juror must find in favor of that side which is least doubtful. But on a question primarily, and until rebutted, conclusively solved by a powerful presumption of law, we cannot understand how a jury can be justified in disturbing that existing status of legal satisfaction, upon evidence which merely raises a doubt, however reasonable.
*196 The doctrine that the jury must be governed by the preponderance ■of evidence, is vague, uncertain and unsatisfactory. The only evidence on the question of sanity or insanity, found in the case, might be evidence of the defendant, and although it might not be sufficient to raise more than tlie most shadowy doubt, tlie jury, under this doctrine, iuiglit be required to acquit. If, on the contrary, the presumption of sanity is to be considered as an element of weight in favor of the State, wo are then remitted to the original question, as to what weight of contrary testimony will constitute preponderance.
Much reflection has convinced us that the doctrine of the English courts, and of this and other American courts which have followed them, is most, conformable to reason, prindple and common sense.
The tendency of the opqiosite theory is, in our judgment, to emasculate our system of criminal justice, and to send juries adrift without any reliable chart or compass, upon a sea of doubt and speculation.
The phenomena of the human mind are so mysterious, the boundaries between its normal and abnormal conditions so shadowy, the transports of frantic passion and tlie powerful impulses of vicious tendencies are so nearly akin to temporary mental derangement, that unless juries hold fast to the wholesome presumption of sanity, responsibility for crime will be seriously impaired, ahcl society will lie at the mercy of evil disposed men, who, while too sane to be confined in asylums, can yet raise a doubt as to whether they are sane enough to be punished for crime.
AYe stand by the doctrine of this court in Coleman’s case, that insanity, when set up as a defense to a criminal charge, must be “clearly shown by evidence which will satisfy the minds of the jury that the party was insane at the time of the commission of tlie offense; ” and we know of no definition of “ proof beyond a reasonable doubt,” which is not fully covered by this statement. Certainly in this case, the Judge meant, and sufficiently informed the jury that he meant, nothing more than this, because in other parts of his charge he distinctly told the jury: “ Should the mental unsoundness of one or more of the accused, at the time of the commission of the offense, be established to the satisfaction of the jury, * * * you will acquit him or them; ” and again, “ if you believe, that at the time of the act they are accused of, they were not in such a mental condition as to create any responsibility on their part, * * * acquit them.”
As to the rulings of the Judge upon the qualification of jurors who had read the report of the evidence on the preliminary examination of the accused, as published in the newspapers, we do not think that the decisions of courts, disqualifying jurors who had conversed with wit *197 nesses in a ease, and had formed opinions based on their statements, apply.
In the rules adopted for the seeming of impartial and unprejudiced .juries, the law is guided by practical considerations, and can sanction none inconsistent with the existence of jury trial. The exclusion of those who hare personally conversed with witnesses will ordinarily ■embrace but a small part of the community. But as long as the law permite the publication of preliminary evidence in the newspapers, all readers of newspapers are likely, and in eases of public interest, almost certain to read such reports.
The exclusion of such persons from jury service would embrace the most intelligent class of the community, and among an educated people, the most numerous. Nor is it to be expected that they should read without forming impressions from wliat they read. The law Is satisfied if, notwithstanding such Impressions, the juror5» mind remains open to ■conviction, callable of doing- justice and of deciding according to the law and the- evidence, without being influenced by these previous Impressions.
We remain satisfied of the soundness of the Judge’s rulings on all points, and the rehearing is refused.